UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

                       Plaintiff,

                                            19 CV 4137 (KAM)

    - against -

GARRETT M. O'ROURKE and
MICHAEL J. BLACK,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS


                                       RICHARD P. DONOGHUE
                                       United States Attorney
                                       Eastern District of New York
                                       271 Cadman Plaza East
                                       Brooklyn, New York 11201


HIRAL D. MEHTA
Assistant U.S. Attorney
  (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of the parallel criminal case, United States v. Michael Black and Garrett O'Rourke, No. 19-MJ-644 (KAM) (the "Criminal Case"), which has been filed in this district, and a related, ongoing grand jury investigation. The same underlying facts are at issue in both the civil and the criminal matters. The government intends to seek an indictment of the Criminal Case shortly, and will seek to relate the case to Your Honor at that time, pursuant to Local Rule 50.4.

A stay of proceedings is appropriate because the government's motion is timely and the same alleged fraudulent schemes are at issue in both the Civil and Criminal Cases. Moreover, a stay is necessary, as the defendants should not be permitted to use civil discovery in the Civil Case to avoid the restrictions on criminal discovery that would otherwise pertain to them in the Criminal Case. A stay is also necessary to promote judicial economy. Accordingly, the United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24; and (2) order, pursuant to the Court's inherent power, that proceedings in the Civil Case be stayed until the conclusion of the related Criminal Case.

Counsel for defendant Michael Black has informed the government that Black opposes the government's motion for a stay of the Civil Case. The government also has consulted with counsel for defendant Garrett O'Rourke and the Securities and Exchange Commission ("SEC"). O'Rourke does not oppose our motion to stay. The SEC does not oppose the government's intervention and takes no position on the motion to stay if granted after the preliminary injunction hearing scheduled for tomorrow, August 13, 2019 (the "PI Hearing").

The government, however, respectfully requests that the Court adjourn the PI Hearing until the Court rules on the government's motion to stay. The SEC intends to have an investigator testify about the Civil Case at the PI Hearing. Because the evidence in the Civil Case and the Criminal Case is overlapping and references the same conduct, the PI Hearing would unquestionably prejudice the government by allowing Black a preview of the evidence of the Criminal Case pre-indictment, thus allowing Black an opportunity to obstruct the ongoing investigation and receive information about the government's witnesses in the Criminal Case.

For the reasons discussed below, the Court should adjourn the PI Hearing and grant the motion to stay the Civil Case.

## FACTUAL BACKGROUND

I.      The Criminal Case

On July 17, 2019, the Honorable Steven M. Gold, United States Magistrate Judge, issued arrest warrants for the defendants, based on an affidavit and complaint by Federal Bureau of Investigation ("FBI") Special Agent Kurt Dengler (the "Criminal Complaint"), alleging that the defendants conspired to commit securities fraud. (See Criminal Case, ECF Docket No. 1). Specifically, the Criminal Complaint alleges that the defendants, together with others, agreed to defraud investors in the securities of AV1 Group Inc. ("AVOP"), a microcap stock,[1] by artificially controlling the price and volume of AVOP through the use of (1) call rooms in Florida and Colombia; (2) wire payments among co-conspirators; and (3) matched trades in AVOP shares.[2]

---

[1] A "microcap" or "penny" stock generally refers to stocks of publicly traded U.S. companies that have a low market capitalization.

[2] A "matched trade" generally refers to a purchase and a sale of a security that was pre-arranged so that the purchase and sale orders match each other in price, volume and time of execution. This practice fraudulently increases trading volume of the security and permits the seller to sell securities when there would not be a market demand for such securities absent such

The Criminal Complaint further alleges that the defendants, in participating in the foregoing activities, engaged in two schemes: (1) the "Pump and Dump Scheme" and (2) the "Matched Trade Scheme."

In the Pump and Dump Scheme, Black acquired approximately seven million AVOP shares in April 2016. Black then enlisted the help of call rooms, one of which was based in Florida and the other in Colombia, to contact potential investors and fraudulently entice them to purchase and retain AVOP shares. O'Rourke was the head of the Florida-based call room, and another co-conspirator ("Co-conspirator 1") was the head of the Colombia-based call room. The co-conspirators working in these call rooms called potential investors and made material misrepresentations about themselves, including by using false names and identities, and about AVOP and AVOP shares. While the co-conspirators operating out of the Florida and Colombia call rooms fraudulently manipulated and increased AVOP's stock price, Black sold his AVOP shares for far higher prices than he acquired them for, reaping significant profits, and sharing some of those proceeds with O'Rourke. During this time, investors in Queens, Brooklyn and Staten Island, New York purchased AVOP stock at artificially inflated prices.

As alleged in the Criminal Complaint, as part of the Matched Trade Scheme, Black, together with others, including another co-conspirator ("Co-Conspirator 2"), used matched trades to sell his remaining AVOP shares between late 2016 and early 2017. The Criminal Complaint further alleges that an undercover FBI Special Agent ("Undercover 1") purported to represent a group of corrupt stock brokers and, in coordination with Co-Conspirator 2, placed orders to buy AVOP shares that matched the terms of Black's order to sell those securities, in exchange for a payment from Black to Co-Conspirator 2, which was then provided to Undercover 1.

---

an arrangement.

## II.        The Civil Case

On July 17, 2019, the SEC filed a complaint ("SEC Complaint") and a motion

for a temporary restraining order ("TRO") in the Civil Case charging the defendants with

securities fraud premised on the same conduct as that alleged in the Criminal Complaint.   (See

Civil Case, ECF Docket No. 1).   On July 17, 2019, the Court scheduled a hearing on the TRO

for August 1, 2019.   (ECF Docket No. 7).   On July 30, 2019, the Court granted Black's motion

for extension of the PI Hearing and adjourned the PI Hearing until August 13, 2019.   On August

8, 2019, Black filed a motion to adjourn the PI Hearing and expedited discovery.   (ECF Docket

No. 29).   On August 9, 2019, the SEC filed an opposition to Black's motion.   (ECF Docket No.

30).   On August 12, 2019, the Court denied Black's motion for expedited discovery.   On

August 12, 2019, defense counsel for Black informed the government that Black intends to issue

a subpoena to FBI Special Agent Kurt Dengler, the affiant on the Criminal Complaint, to testify

at the PI Hearing.   The government has not yet received the subpoena.

## ARGUMENT

## POINT ONE

## INTERVENTION IS APPROPRIATE

## I.        Applicable Law

Rule 24 of the Federal Rules of Civil Procedure provides that a party may

intervene in a civil action either as a matter of right or on a permissive basis.   Either avenue

justifies intervention by the United States in the present action.   See In re Air Cargo Shipping

Servs. Antitrust Litig., M.D.L. No. 1775, No. 06-MD-1775, 2010 WL 5027536, at *1, *3

(E.D.N.Y. Dec. 3, 2010) (in granting motion, noting that, "[w]hether as of right under Rule 24(a)

or by permission under Rule 24(b), courts in the Second Circuit have routinely granted motions

made by prosecuting authorities seeking to intervene in civil actions for the purpose of obtaining

stays of discovery").

Federal Rule of Civil Procedure 24(a) provides that a person may intervene as of right when the applicant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Intervention is appropriate under Federal Rule of Civil Procedure 24(a) if the application is timely, the party has an interest in the transaction that is the subject of the action, the action may impede the party's ability to protect that interest, and the party's interests are not adequately represented in the action. See Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006); Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129, 132-36 (1967) (permitting State of California to intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

Additionally, a court may permit intervention when an applicant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Intervention under Federal Rule of Civil Procedure 24(b) is "wholly discretionary with the trial court." U.S. Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). In exercising their discretion, courts consider the nature and extent of the intervener's interests, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties. See SEC v. Platinum Mgmt. (NY) LLC et al., No. 16-CV-6848 (DLI), 2017 WL 2915365, at *3 (E.D.N.Y. July 7, 2017) (granting permissive intervention because there was "significant overlap" between the civil proceeding and the criminal case and "[b]oth actions share common legal and factual questions"); SEC v. Shkreli,

6

No. 15-CV-7175 (KAM), 2016 WL 1122029, at *3 (E.D.N.Y. Mar. 22, 2016) (granting

permissive intervention because there were "significant overlaps between the SEC complaint and

the indictment in the criminal case" and "[b]oth actions share a great number of common legal

and factual questions"); Berroyer v. United States, 282 F.R.D. 299, 302-03 (E.D.N.Y. 2012)

(same); Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993) (same).

II.      Discussion

         Permitting the United States to intervene in this case under Rule 24 is appropriate.

The government's motion to intervene is timely, as it is being filed before any discovery has

taken place in the Civil Case and no party has suffered prejudice.   Moreover, as demonstrated

above, the same alleged fraudulent schemes are at issue in both the Civil Case and the Criminal

Case.

         When prosecutors have advised courts that they are conducting criminal

prosecutions or investigations of individuals involved in a pending civil action, the courts have

routinely permitted the government to intervene to request a stay of proceedings or discovery in

the ongoing civil cases.   See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (permitting

government intervention to seek stay of civil discovery in SEC action pending completion of a

criminal investigation involving the same underlying facts was not an abuse of discretion under

either Rule 24(a) or Rule 24(b)); see also SEC v. Doody, 186 F. Supp. 2d 379, 381 (S.D.N.Y.

2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8 (D. Conn. 2002); SEC v.

Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993); Twenty

First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992).

         Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the

strong interest of the government and the public in the enforcement of criminal laws.   See, e.g.,

Cascade Natural Gas Co., 386 U.S. at 132-36 (permitting intervention as of right by State in antitrust proceedings because of public interest in effective competition); SEC v. Realty & Improvement Co., 310 U.S. 434, 458-60 (1940) (SEC should have been permitted to intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the public interests which [the SEC] was designated to represent").   That interest may be substantially impaired if civil proceedings are allowed to continue in this matter before the resolution of the Criminal Case, as explained further in Point II below.

Courts have specifically recognized that the government "has a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."   Chestman, 861 F.2d at 50; see Morris v. Am. Fed'n of State, County & Mun. Employees, No. 99 Civ. 5125 (SWK), 2001 WL 123886, at *1 (S.D.N.Y. Feb. 9, 2001) (permitting District Attorney to intervene in civil action to request stay of discovery); Bd. of Governors of Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); First Merchs. Enter., Inc. v. Shannon, No. 88 Civ. 8254 (CSH), 1989 WL 25214, at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing United States Attorney to intervene in civil action).

Intervention is also warranted as an exercise of this Court's discretionary authority because the defendants are charged with engaging in the same schemes as are alleged in the Criminal Case.   Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Case – namely, whether the defendants charged in both the Civil and Criminal Cases schemed to defraud investors and potential investors in AVOP stock.   The United States seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions.   In fact, the

criminal proceedings may benefit the civil parties, by bringing out facts relevant to the Civil

Case and streamlining the ensuing litigation.   Accordingly, the Court should permit the

government to intervene.

POINT TWO

A STAY OF THE CIVIL PROCEEDINGS SHOULD BE GRANTED

I.      Applicable Law

District courts have the inherent authority to stay their own civil proceedings.

See Landis v. N. Am. Co., 299 U.S. 248 (1936).   A stay of proceedings and discovery in a civil

case is particularly appropriate when, as here, a criminal complaint already has been filed and a

criminal indictment is expected to be returned imminently.   SEC v. McGinnis, Case No. 14 Civ.

6, 2016 WL 591764, at *3-*4 (D. Vt. Feb. 12, 2016) (discussing how "status of the case" factor

weighs in favor of stay when criminal indictment is imminent or has been filed, and granting

defendant's request for stay of parallel SEC action over SEC's objection); SEC v. One or More

Unknown Purchasers of Securities of Global Indus., Ltd., 6500 (RA), 2012 WL 5505738, at *3

(S.D.N.Y. Nov. 9, 2012) (same, and granting government's motion for stay over defendant's

objection); Doody, 186 F. Supp. 2d at 381 ("Once an indictment has been returned, the

government often moves for and frequently obtains relief preventing a criminal defendant from

using parallel civil proceedings to gain premature access to evidence and information pertinent to

the Criminal Case.").   Pursuant to this discretionary authority, courts may decide to stay civil

proceedings, postpone civil discovery, or impose protective orders.   See SEC v. Dressler, 628

F.2d 1368, 1375 (D.C. Cir. 1980).

In determining whether to exercise its discretion to stay the civil proceedings, the

Court should balance the following considerations (referred to herein as the "six factors"):

9

(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

Hicks v. City of N.Y., 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003); see also Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 99 (2d Cir. 2012) (recognizing district courts' application of the six factors in this context, noting that such balancing tests "act as a rough guide for the district court as it exercises its discretion," and opining that a court's decision whether to grant stay of a civil case "ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case" (internal quotation marks and citation omitted)).

In many recent decisions in this Circuit and others, courts have granted a government motion for a complete stay of civil discovery in a parallel civil case, even over a defendant's objection. Platinum, 2017 WL 2915365, at *6; Shkreli, 2016 WL 1122029, at *7 ("The substantial overlap of the issues in the two actions; the post-indictment status of the criminal case; the SEC's lack of opposition to the government's proposed stay; the court's interest in the efficient resolution of the two proceedings; and the strong public interest in vindication of the criminal law all weigh in favor of a stay of the SEC's civil action."); SEC v. Dubovoy, No. 15 Civ. 6076 (MCA), Order Granting Mot. to Intervene & Stay Discovery, ECF No. 240 (D.N.J. Jan. 29, 2016) (granting government's request for complete stay of SEC action over objection of two fugitive defendants indicted in parallel criminal cases in District of New Jersey and Eastern District of New York); SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd., No. 11 Civ. 6500, 2012 WL 5505738, at *4–*6 (S.D.N.Y. Nov. 9, 2012)

(granting government's request for complete stay of SEC action over objection of corporate defendant).

II.     Discussion

        A.      The Circumstances Presented in This Case Favor Granting the Requested Stay

        This case presents nearly identical circumstances to those that other courts have found dispositive in deciding to grant a stay of a civil case during the pendency of parallel criminal proceedings: the significant overlap between the parallel criminal and civil proceedings; the fact that a criminal case has been initiated, a criminal complaint has been filed and an indictment is imminent; the public's interest in the "effective prosecution of those who violate the securities laws;" and the Court's interest in judicial economy and the desire to safeguard the criminal case from "the specific concerns against which the restrictions on criminal discovery are intended to guard," including the risk that disclosures in the parallel civil case beyond the scope permitted in the criminal case would lead to "perjury and manufactured evidence" and the "revelation of the identity of prospective witnesses." Global Indus., Ltd., 2012 WL 5505738, at *3-*6; see also Gordon, 2009 WL 2252119, at *5-*6; Nicholas, 569 F. Supp. 2d at 1069-73; Platinum, 2017 WL 2915365, at *7; Shkreli, 2016 WL 1122029, at *7.

        For example, in Global Indus., Ltd., the government moved to intervene in an existing SEC proceeding due to a pending grand jury investigation in the Eastern District of New York of the corporate defendant in the SEC case, as well as other co-conspirators. 2012 WL 5505738, at *1. The government admitted that it did not yet know whether it would bring charges against the corporate defendant or others, but requested a complete stay of the SEC proceeding in order to ensure the integrity of the criminal investigation. Id. at *2. The court applied the six-factor test and concluded that a stay was warranted because of the overlapping issues between the civil and potential criminal matters, the efficient resolution of the case, the

11

public's interest in the effective prosecution of those who violate the securities laws, and the risk of prejudice to the criminal case.   Id. at *3-*6.   The court therefore granted a complete stay of the SEC proceeding for a period of six months (the time the government stated it required to make a charging decision).   Id. at *3, *6.   In sum, the Global Indus., Ltd. case is one in which the court found that a complete stay of the civil proceedings was warranted even before any criminal case was filed, circumstances far less favorable to the government than are presented here.

Here, the government will seek to indict the case shortly.   Given the imminent criminal indictment, the Court should, as in Global Indus., Ltd., stay the Civil Case.

B.      A Stay Will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent the defendants from taking unfair advantage of broad civil discovery rules in the Civil Case to avoid the restrictions that would otherwise pertain to them as defendants in the Criminal Case.

The Second Circuit has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter."   Chestman, 861 F.2d at 50. The vast difference between the respective rules that apply to discovery in civil and criminal cases is an important reason for staying civil proceedings and discovery in cases for which there are parallel criminal proceedings.   See, e.g., Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); Twenty First Century Corp., 801 F. Supp. at 1010 (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing

criminal discovery rules"); <u>SEC v. Beacon Hill Asset Management LLC</u>, No. 02 Civ. 8855

(LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of

discovery due to pending criminal investigation, "the principal concern with respect to

prejudicing the government's criminal investigation is that its targets might abuse civil discovery

to circumvent limitations on discovery in criminal cases"); <u>Phillip Morris Inc. v. Heinrich</u>, No.

95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, targets

"may have an opportunity to gain evidence to which they are not entitled under criminal

discovery rules"); <u>Pharaon</u>, 140 F.R.D. at 639 ("A litigant should not be allowed to make use of

the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on

criminal discovery") (citations omitted).

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose

prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil

rules. <u>See, e.g.</u>, Fed. R. Crim. P. 15(a). Nor are they able to obtain documents reflecting prior

statements of witnesses before trial. <u>See</u> 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2).

Likewise, the criminal discovery rules require production only of those documents which the

government intends to offer at trial, are material to preparing the defense, or were obtained from

or belong to a defendant. <u>See</u> Fed. R. Crim. P. 16(a)(1)(E).

Discovery in criminal cases is narrowly circumscribed for important reasons

entirely independent of narrowing the information provided to defendants. Three major reasons

regularly provided by courts in justifying narrow criminal discovery are: (1) that the broad

disclosure of the essentials of the prosecution's case may lead to perjury and manufactured

evidence; (2) that the revelation of the identity of prospective witnesses may create the

opportunity for intimidation; and (3) that the criminal defendants may unfairly surprise the

prosecution at trial with information developed through discovery, while the self-incrimination

privilege would effectively block any attempts by the government to discover relevant evidence

from the defendants.   Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y.

1988); see also Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna

Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990); Founding Church of Scientology v. Kelley, 77

F.R.D. 378, 381 (D.D.C. 1977).

Here, discovery by the defendants of the SEC's investigative file, including all

transcripts of investigative testimony, as well as various "[p]roffer and cooperation agreements"

of presumed witnesses, including those that the defendants presume are "cooperating with the

[SEC], and possibly the Department of Justice," see Mot. For Limited Expedited Discovery,

Criminal Case ECF No. 29 at 5-6,[3] would undoubtedly provide information to the defendants not

otherwise discoverable in the Criminal Case (or at least not discoverable for many months, if not

years, to come), thus enhancing a defendant's ability to manufacture evidence or tailor testimony,

and otherwise severely hamper the government's ability to conduct an orderly investigation and

prosecution.

These concerns are particularly pronounced with respect to tomorrow's PI Hearing.

Black has informed the government that he intends to subpoena Special Agent Kurt Dengler, the

lead case agent on the Criminal Case, to testify at tomorrow's hearing.  Allowing Black to

examine Special Agent Dengler at the PI Hearing would prejudice the government's Criminal Case

by providing Black with an early and expansive insight into the Criminal Case, including by

revealing the identity of any undercover agents or cooperating witnesses, which may lead to

---

[3] Although the Court denied Black's motion for expedited discovery in advance of the PI Hearing, Black's motion is indicative of the sweeping discovery requests Black will make during the pendency of the Civil Case.

obstruction or witness tampering. For these reasons and the others identified herein, the government respectfully submits that tomorrow's PI Hearing should be adjourned until the Court has ruled on the instant motion.

As the government will suffer irreparable prejudice if the defendants are permitted to obtain broad civil discovery – including the purportedly "limited" discovery of the SEC's investigative file sought by Black – prior to the conclusion of the criminal proceedings, the requested stay should be granted.

C.    A Stay Will Serve the Public Interest in Law Enforcement

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." Campbell, 307 F.2d at 487; see also In re Ivan F. Boesky Sec. Litig., 128 F.R.D. 47, 48 (S.D.N.Y. 1989). Indeed, one court has observed that "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

Stays of proceedings and discovery in civil actions reflect a recognition of the vital interests at stake in a criminal prosecution. See, e.g., United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution."). Stays have been granted to halt civil litigation that threatened to impede pre-indictment criminal investigations For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell, 307 F.2d

at 480, insider trading, see, e.g., Chestman, 861 F.2d at 50; Downe, 1993 WL 22126, at *1,

insurance fraud, see, e.g., Raphael, 744 F. Supp. at 73, bank fraud, see, e.g., Pharaon, 140 F.R.D.

at 639, customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437

(U.S. Ct. Int'l Trade 1986), and immigration fraud, see, e.g., Souza v. Shiltgen, No. C-95-3997

MHP, 1996 WL 241824, at *1 (N.D. Cal. May 6, 1986).

Moreover, the prosecution in the Criminal Case will vindicate substantially the

same public interest underlying the SEC's civil action, namely, preventing securities fraud. See,

e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (criminal

prosecution would serve to advance public interest in preserving integrity of competitive

markets); see also Shkreli, 2016 WL 1122029, at *7 (same).

D.      The Civil Parties Will Not Be Prejudiced by the Proposed Stay

The civil parties—namely the SEC and the defendants—will save significant

resources by allowing the Criminal Case to proceed unencumbered by the burdens of civil

proceedings and discovery.   If the defendants are convicted in the Criminal Case, they will in all

likelihood not proceed to trial in the Civil Case.   See SEC v. Freeman, 290 F. Supp. 2d 401, 405

(S.D.N.Y. 2003) ("It is settled that a party in a civil case may be precluded from relitigating

issues adjudicated in a prior criminal proceeding and that the Government may rely on the

collateral estoppel effect of the conviction in support of establishing the defendant's liability in

the subsequent civil action.").

The defendants are also likely to choose to assert their Fifth Amendment rights

against self-incrimination in the Civil Case.   As detailed above, it would be unfair to permit

themto obtain discovery while not requiring that they provide the same.   A stay would also

likely streamline discovery for the SEC.   See Twenty First Century Corp., 801 F. Supp. at 1011

(noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties").   The SEC and the defendants will therefore benefit from, as opposed to be prejudiced by, a stay of proceedings and discovery in the Civil Case.

E.       The Court Will Not Be Inconvenienced If It Stays Proceedings in the Civil Case

The Court will not be inconvenienced as a result of the requested stay.   To the contrary, as stated above, should the Criminal Case result in a conviction, it could greatly streamline the Civil Case.   A stay of civil proceedings is also likely to narrow or eliminate factual issues in the civil litigation.   See, e.g., In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); United States v. Mellon Bank, 545 F.2d 869, 873 (3d Cir. 1976) (affirming a stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); Brock v. Tolkow, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (in granting a stay, noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues").   Such narrowing of the issues in the Civil Case will save the Court's time and resources when the civil proceedings' stay is lifted at the conclusion of the criminal proceedings.

In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting the instant motion for a stay.   In the interest of permitting the government to complete its prosecution in the Criminal Case, the government respectfully requests that its motion for a stay of proceedings in the Civil Case be granted and that the PI Hearing scheduled for tomorrow, August 13, 2019, be adjourned.

Dated:  Brooklyn, New York
        August 12, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York

                                        /s/ Hiral D. Mehta
                                        Hiral D. Mehta
                                        Assistant U.S. Attorney
                                        (718) 254-6418

 Cc:    Clerk of the Court (KAM) (By ECF)
        Roland Riopelle, Esq. (By ECF)
        Seth Waxman, Esq. (By ECF)