

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 05 2019 ★

BROOKLYN OFFICE

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AES:HDM
F. #2018R00594

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 5, 2019

**By ECF and Hand Delivery**

The Honorable Dora L. Irizarry
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

The Honorable Kiyo Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

CR 19-407

JOHNSON, J.

BULSARA, M.J.

Clerk of the Court
(for forwarding to randomly assigned United States District Judge)
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>United States v. Michael Black</u>, 19 CR _____ ("Criminal Case")
            <u>United States v. Michael Black</u>, 19 CV 4137 (KAM) ("Civil Case")

Dear Chief Judge Irizarry, Judge Matsumoto and Clerk of the Court:

       Pursuant to Local Rule 50.4, the government respectfully notifies the Court that the above-captioned cases (the "Criminal Case" and the "Civil Case," respectively) are related because the same underlying facts are at issue in both cases, and respectfully requests that the Criminal Case be reassigned to Judge Matsumoto, before whom the Civil Case is currently pending.

Local Rule 50.4 provides that the Chief Judge may at any time, with the consent of the judges involved, reassign individual cases. Local Rule 50.4 further provides that "[n]o case shall be reassigned except in the interest of justice and the efficient disposition of the business of the court."

I.  **The Criminal Case**

On July 17, 2019, the Honorable Steven M. Gold, United States Magistrate Judge, issued an arrest warrant for the defendant Michael Black based on an affidavit and complaint by Federal Bureau of Investigation ("FBI") Special Agent Kurt Dengler (the "Criminal Complaint"), which alleged that the defendant and a co-defendant, Garrett O'Rourke, conspired to commit securities fraud. (See Criminal Case, ECF Docket No. 1). Specifically, the Criminal Complaint alleges that the defendant, together with others, agreed to defraud investors in the securities of AV1 Group Inc. ("AVOP"), a microcap stock,[1] by artificially controlling the price and volume of AVOP through the use of (1) call rooms in Florida and Colombia; (2) wire payments among co-conspirators; and (3) matched trades in AVOP shares.[2] The Criminal Complaint further alleges that the defendant, in participating in the foregoing activities, engaged in two schemes: (1) the "Pump and Dump Scheme" and (2) the "Matched Trade Scheme."

In the Pump and Dump Scheme, the defendant acquired approximately seven million AVOP shares in April 2016. He then enlisted the help of call rooms, one of which was based in Florida and the other in Colombia, to contact potential investors and fraudulently entice them to purchase and retain AVOP shares. Co-defendant O'Rourke was the head of the Florida-based call room, and another co-conspirator ("Co-Conspirator 1") was the head of the Colombia-based call room. The co-conspirators working in these call rooms called potential investors and made material misrepresentations about themselves, including by using false names and identities, and about AVOP and AVOP shares. While the co-conspirators operating out of the Florida and Colombia call rooms fraudulently manipulated and increased AVOP's stock price, the defendant sold his AVOP shares for far higher prices than he acquired them for, reaping significant profits, and sharing some of those proceeds with O'Rourke. During this time, investors in Queens, Brooklyn and Staten Island, New York purchased AVOP stock at artificially inflated prices.

As alleged in the Criminal Complaint, as part of the Matched Trade Scheme, the defendant, together with others, including another co-conspirator ("Co-Conspirator 2"),

---

[1] A "microcap" or "penny" stock generally refers to stocks of publicly traded U.S. companies that have a low market capitalization.

[2] A "matched trade" generally refers to a purchase and a sale of a security that was pre-arranged so that the purchase and sale orders match each other in price, volume and time of execution. This practice fraudulently increases trading volume of the security and permits the seller to sell securities when there would not be a market demand for such securities absent such an arrangement.

used matched trades to sell his remaining AVOP shares between late 2016 and early 2017. The Criminal Complaint further alleges that an undercover agent ("Undercover 1") purported to represent a group of corrupt stock brokers and, in coordination with Co-Conspirator 2, placed orders to buy AVOP shares that matched the terms of the defendant's orders to sell those securities, in exchange for a payment from the defendant to Co-Conspirator 2, which was then provided to Undercover 1.

On September 5, 2019, a grand jury in the Eastern District of New York returned an indictment charging the defendant with securities fraud, securities fraud conspiracy and wire fraud conspiracy based on essentially the same criminal conduct that was detailed in the Criminal Complaint.

## II.     The Civil Case

On July 17, 2019, the SEC filed a complaint ("SEC Complaint") and a motion for a temporary restraining order ("TRO") in the Civil Case charging the defendant and O'Rourke with securities fraud premised on the same conduct as that alleged in the Criminal Complaint. (See Civil Case, ECF Docket No. 1). On July 17, 2019, the Court scheduled a hearing on the TRO for August 1, 2019. (ECF Docket No. 7). On July 30, 2019, the Court granted the defendant's motion for extension of the PI Hearing and adjourned the PI Hearing until August 13, 2019. On August 8, 2019, the defendant filed a motion to adjourn the PI Hearing and expedited discovery. (ECF Docket No. 29). On August 9, 2019, the SEC filed an opposition to the defendant's motion. (ECF Docket No. 30). On August 12, 2019, the Court denied the defendant's motion for expedited discovery. Also on August 12, 2019, the government moved to intervene in the civil case and the Court granted the government's motion (ECF Docket No. 35); having intervened, the government then moved to stay the civil case and the Court granted the motion to stay. (ECF Docket No. 35). On August 14, 2019, after a hearing on the TRO on August 13, 2019, the Court entered a preliminary injunction against the defendant. (ECF Docket No. 39).

## III.    Reassignment Would Conserve Judicial Resources

Because the Criminal Case and the Civil Case share the same subject matter, are based on substantially the same facts and involve the same defendant—Michael Black—the government respectfully submits that reassignment of the Criminal Case to Judge Matsumoto, before whom the Civil Case is pending and before whom the government has already appeared, would be appropriate. Reassignment of the Criminal Case would serve the interests of justice and result in significant savings of judicial resources, given Judge Matsumoto's familiarity with the Civil Case and, therefore, the subject matter of the Criminal Case, and her decisions to permit the government to intervene in the Civil Case and stay the Civil Case pending the Criminal Case.

## IV.  Conclusion

For the foregoing reasons, the government respectfully submits that the Criminal Case should be reassigned to Judge Matsumoto.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

By: _____/s/_____
Hiral D. Mehta
Assistant U.S. Attorney
(718) 254-6418

cc: Clerk of the Court (by ECF)
Seth Waxman, Esq. (counsel to Michael Black) (by E-mail)

4